RALPH E. METSCHKE ET AL., APPELLANTS, V. LELAND MARXSEN, APPELLEE.

125 N. W. 2d 684

Filed January 10, 1964. No. 35478.

Kerrigan, Line & Martin, for appellants.

Sidner, Lee, Gunderson & Svoboda, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is a suit in equity to have a conditional sales contract declared null and void under the Nebraska Installment Loan Act, sections 45-138 and 45-155, R. R. S. 1943, and to recover payments made thereon. The defendant denied that a sale of the truck involved was consummated or that a loan was made. Defendant further alleged that he was engaged in the trucking business; that he was not engaged in the business of lending money within the provisions of the Nebraska Installment Loan Act; and that he was not therefore subject to its terms. Defendant filed a cross-petition seeking damages for the use of his truck for a period of 43 days and for damages sustained to the truck during the period of such use. The trial court found for the defendant, dismissed plaintiffs' petition, and entered judgment for the defendant on his cross-petition in the amount of $1,443.18. The plaintiffs appealed.

We shall hereafter refer to Ralph E. Metschke, the principal plaintiff, as Metschke, and to the defendant Leland Marxsen as Marxsen.

It is contended that the trial court erred in not finding that the contract was in violation of the Nebraska Installment Loan Act and subject to the penalties thereof. It is further contended that the trial court erred in not finding that Marxsen waived, or was estopped from asserting, the ineffectiveness of the contract by the acceptance of payments and the delivery of the truck into the possession of Metschke.

There is little dispute in the evidence as to the pertinent facts. They reveal the following situation. Marxsen was engaged in the transportation business and was

the owner of trucks used in the business, including a 1954 International truck tractor. Metschke was employed by Marxsen as a truck driver. Metschke desired to go into the transportation business on his own, and on or about November 8, 1962, entered into negotiations with Marxsen for the purchase of the International truck tractor. Marxsen offered to sell the truck tractor to Metschke for $6,000. Metschke attempted to finance the transaction through his bank in Fremont and a finance company in Omaha. He was unable to secure a loan and Marxsen suggested that Metschke try his bank, the First State Bank of Fremont. Credit references and financial statements were required and furnished to the bank. The latter bank agreed to make the loan for $3,500, provided a cash payment of $2,500 was made and a contract entered into with Marxsen for the purpose of assignment to the bank.

Metschke advised Marxsen that he did not have $2,500 in cash, but that he had a pick-up truck and some vending machines which he could sell within a week or so and raise the money.

The bank made up a conditional sales contract in the principal amount of $3,500 to which was added $185.76 for insurance and a time price differential of $442.24, a total of $4,128. The conditional sales contract was signed by Marxsen and Metschke and the latter's wife. The contract was not dated for the reason, as stated by Marxsen, that it was to be dated and become effective only on the payment of the $2,500 in cash as the down payment.

Metschke was unable to sell the pick-up truck or the vending machines. Metschke paid $300 of the down payment. Marxsen kept pressing Metschke for the balance, advising him that the truck tractor was mortgaged to the bank and that the note was due. Marxsen asked Metschke what his pick-up truck was worth. Metschke said $900. Marxsen offered to take the pick-up at $900 to be applied on the down payment for the

truck tractor. Metschke accepted the offer and delivered the pick-up truck to Marxsen, together with the certificate of title.

Marxsen thereupon permitted Metschke to use the International truck tractor with which to earn money to be applied on the balance of the cash payment. Metschke paid $300 to Marxsen out of the earnings made by the use of the truck tractor. He was also given credit for $96.20 for hauling performed for Marxsen during this period. Marxsen retained the certificate of title to the truck tractor during the period Metschke was using it. The truck tractor was covered by insurance provided by Marxsen, and the cargo insurance was provided by the Freeman Transportation Company, which was owned by Marxsen.

Metschke then returned the truck tractor to Marxsen's place of business, and without Marxsen's consent took the pick-up truck from in front of his place of business and the certificate of title thereto from Marxsen's desk. The next day Metschke informed Marxsen that he was unable to make the down payment and that he could not go through with the deal.

The evidence shows that Metschke understood that the $2,500 in cash had to be paid before the bank would make the loan. The record indicates that the bank would not release its mortgage on the International truck tractor until the $2,500 was received by it in reduction of Marxsen's note and mortgage for $17,000 on the International and other trucks. Upon the receipt of the $2,500 the bank would then take the assignment of the conditional sales contract from Marxsen for $3,500, which also was to be applied on Marxsen's loan from the bank.

The $2,500 down payment was not made and the bank advanced nothing that could be denominated a loan of money. No loan was ever made and consequently no interest, usurious or otherwise, was contracted to be paid.

The general rule is where a contract is executed but its effectiveness or fulfillment is dependent upon the doing of an agreed-upon condition before it shall become a binding contract, such contract cannot be enforced unless the condition is performed. Norman v. Waite, 30 Neb. 302, 46 N. W. 639; O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403; Federal Reserve Bank v. Neuse Mfg. Co., 213 N. C. 489, 196 S. E. 848. In the last case cited the court said: "That a contract is not made so long as in the contemplation of both parties thereto something remains to be done to establish contract relations is too well established to require the citation of authority. * * * In negotiating a contract the parties may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement. A promise, or the making of a contract, may be conditioned upon the act or will of a third person."

In the instant case the sale of the truck tractor and the making of the loan by the bank was dependent upon the payment of the down payment of $2,500. The payment was not made and the conditional sales contract did not become effective. The bank likewise was under no obligation to make the loan for the reason that the payment of the $2,500 was a condition precedent to its agreement to make the loan. Loucks v. Smith, 154 Neb. 597, 48 N. W. 2d 722.

It is asserted, however, that Marxsen waived, or is estopped to deny, the validity of the transaction by accepting payments in an amount less than the $2,500. The evidence hereinbefore recited shows that Metschke fully understood when the payments were made that the $2,500 had to be paid in full before the sale would be consummated by Marxsen, or the loan made by the bank. The conduct of Metschke in returning the truck tractor and tortiously repossessing the pick-up truck and the certificate of title thereto is proof enough of this fact. It was Metschke and not Marxsen who was in

default in the performance of the sales agreement. The use of the truck tractor by Metschke was nothing more than a bailment of the truck tractor, based on Marxsen's anticipation that Metschke would comply with his contract, which he failed to do.

Metschke assigns as error the allowance of damages to Marxsen for the use of the truck tractor during the period Metschke was attempting to raise the $2,500 down payment. The evidence shows that the use of the truck tractor permitted by Marxsen was on the assumption that Metschke would comply with his agreement and pay the $2,500. The partial payments made by Metschke indicated good faith on the part of Metschke. When Metschke failed to comply with his agreement, a part of the resulting damages to Marxsen was the loss of the use of the truck. There is evidence that the value of the use of the truck tractor was $50 per day and the period of the use was 43 days. The amount thus found, less the part payments on the sales contract, produces the $1,443.18 for which judgment was entered on Marxsen's cross-petition. The judgment is supported by the evidence.

The findings of the trial court are consistent with the holdings of this opinion and are in all respects correct. The judgment of the trial court is affirmed.

AFFIRMED.