DARRELL EMPFIELD ET AL., APPELLANTS, V. AINSWORTH
IRRIGATION DISTRICT, A PUBLIC CORPORATION, ET AL.,
APPELLEES.
286 N. W. 2d 94

Filed December 4, 1979.  No. 42537.

Hutton & Garden, P.C., for appellants.

Rodney J. Palmer, for appellees.

Heard before KRIVOSHA, C. J., WHITE, BRODKEY, and HASTINGS, JJ., and HOWARD, District Judge.

HASTINGS, J.

This was an action brought by plaintiffs as owners of land within the defendant Ainsworth Irrigation District's (District) boundaries for damages to their crops caused by an alleged breach of contract to deliver irrigation water by the District and the individual defendants as directors of the District. The second cause of action alleges that the claimed acts constituting the breach by defendants were "* * * arbitrary and capricious and constituted unjust discrimination against the plaintiffs * * * contrary to

the Constitution * * *.'' As such, it states no additional grounds for recovery; and as will be shown later on, there was no evidence to support such allegations. At the conclusion of plaintiffs' evidence the District Court sustained defendants' motion to dismiss, made on the basis of a failure of the evidence to support a verdict in favor of plaintiffs. Plaintiffs have appealed.

Plaintiffs assign as error the rejection by the trial court of exhibits 7 and 42 offered by them and, generally, the trial court's failure to submit the case to the jury.

The evidence questions may be disposed of at the outset. Exhibit 7 was a letter dated July 22, 1967, from Robert and Genevieve Hopkins, the plaintiffs' predecessors in title to the farmland involved in this litigation, directed to the defendant Henry S. Miles as president of the District. It obviously had no bearing upon and was irrelevant to this action. Exhibit 42 was a copy of some 34 pages from what appears to be a textbook or reference book on the general subject of Federal Reclamation Law, according to the title appearing at the top of each page. It contains paraphrased excerpts from congressional acts on the subject, historical data, and comments by an unknown author. Although not artfully made, defendants' objections can be interpreted as relating to a lack of foundation and relevancy, and as such were properly sustained.

A motion for a directed verdict made at the close of a plaintiff's case must be treated as an admission of the truth of all material and relevant evidence admitted favorable to the plaintiff who is entitled to the benefit of all proper inferences that can reasonably be deduced therefrom. Bohling v. Farm Bureau Ins. Co., 191 Neb. 141, 214 N. W. 2d 381 (1974). ''In every jury case, at the conclusion of plaintiff's evidence, there is a preliminary question for the court to decide, when properly raised, not whether there is

literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the plaintiff, upon whom the burden of proof is imposed." Durrett v. Baxter Chrysler-Plymouth, Inc., 198 Neb. 392, 253 N. W. 2d 37 (1977).

The District is an irrigation district organized in Brown County, Nebraska, under the provisions of section 46-101 et seq., R. R. S. 1943. The District receives the water it disperses under contract with the United States Bureau of Reclamation. 43 U. S. C. A., § 423e, the so-called "excess acre law," requires in part that all contracts with irrigation districts shall provide that all irrigable land held in private ownership by any one owner in excess of 160 acres shall not receive water for such excess acres until compliance is had with certain requirements as may be prescribed by the Secretary of the Interior.

The plaintiffs own and farm approximately 705 acres of farmland located in Brown County, having acquired title from Mrs. Empfield's brother and his wife, Robert and Genevieve Hopkins, in 1972. According to Darrell Empfield, plaintiffs and the Hopkins had been farming the land as partners from 1966 until transfer of the title of the land to plaintiffs in 1972. With ownership spread among four partners, some 490 acres of the land had been certified to receive irrigation water from the District prior to 1972. On June 27, 1972, plaintiffs received a letter from the District to the following effect: "Your purchase of land from Robert W. Hopkins and wife will make you excess of the 160-acre limitation law. Before we can deliver water to any of your acres, it will be necessary for you to take care of these excess acres." At trial, Darrell Empfield stated he had been working around reclamation projects doing land leveling for a good many years and had been aware of the excess acre law for 20 or 25 years.

In 1972, Darrell Empfield desired to expand his irrigated acreage. On November 14th of that year, he

attended a meeting of the board of directors of the District. The minutes reflect the following official action: "Darrel Empfield requested to have approximately 80 acres of land being in the W½ NW¼ of Section 35, T31N R23W, the N½ and SW¼ of Section 34, T31N R23W, and the NE¼ of Section 8, T30N R23W rounded out and squared up to development and brought into the District. The Board approved this action providing he pays the back assessments and takes care of his excess acres. Final approval rests with the U.S.B.R." It can be said without fear of contradiction that the foregoing terms constitute the contract which forms the basis of plaintiffs' present action.

It is apparent from the action by the board of the District that two conditions were attached to the agreement to furnish water to plaintiffs' excess acres, i.e., payment of the back assessments and taking care of the excess acres. There is no question but what plaintiffs paid all back assessments. However, in spite of the District's repeated warnings, both oral and written, plaintiffs admit that their attempts to take care of the excess acres consisted of the creating of two corporations, owned solely by the Empfields, in order to spread out the ownership of the land, and the drafting of deeds covering part of the land, naming a hired man and an adult daughter of Mrs. Empfield as grantees, neither of which deeds was delivered or recorded. None of these actions were approved by the District.

Plaintiffs acknowledged that they had received both oral and written notice about their excess acres. They received exhibit 9, a letter dated March 14, 1973, from the District, which said in part: "Final approval has now been received from the Bureau of Reclamation on land changes you wish made * * *. * * * However, in order for you to receive water on any land in excess of 320 acres, you must clarify your excess acre standing. If this has

not been done prior to watering season, the Ainsworth Irrigation District will designate which 320 acres will be eligible to receive water and only those 320 acres can be watered. We are taking this action * * * as we feel we can choose 320 acres to be watered more in line with your thinking than can the Bureau." Plaintiffs received exhibit 10, a letter dated April 13, 1973, from the District: "The Board * * * has asked me to call to your attention again the fact that you are in excess of the 160-acre limitation law. This is the last notice you will receive. * * * Therefore, if we do not receive from you prior to April 23 any clarification of your excess standing, we will forward this to the Bureau of Reclamation and they will designate to bring you in compliance with the excess acre law. Those acres designated as excess will not be eligible to receive water." The District again wrote plaintiffs on July 30, 1973: "This is to inform you that you have until August 1, 1973 to designate which 320 acres you wish to receive water on, or to otherwise *complete* land area changes to clear your excess acre standing, or we will designate for you, and water to the remainder of your acreage will be discontinued. We hesitate to take this action; * * * and we must comply with our contract with the Bureau of Reclamation." Finally, the U. S. B. R. wrote a letter to plaintiffs dated August 9, 1973, recounting three of the previously ignored letters written to them by the District. The bureau then went on to designate 320 acres, by description, as being eligible to receive water, and the remaining 250.3 acres which would be ineligible to receive water until satisfactory ownership changes had been made. Finally, although the District had furnished water for three waterings during the summer, on August 11, 1973, it closed and padlocked the gates, preventing additional water for the 250 acres. As a result, according to plaintiffs, they raised only about 65 bushels per acre on those 250 acres rather

than the expected 135 bushels. It is this act of the District in cutting off additional irrigation water that the plaintiffs claim constituted a breach of contract.

Other than the attempts at incorporation and the nondelivered deeds previously mentioned, Darrell Empfield testified that Mr. Kutz of the McCook Bureau of Reclamation told him he had 10 years to comply with the excess acre law. However, this was pure hearsay and utterly without foundation. It was also contrary to the rejected exhibits which plaintiffs had offered.

Nothing further was done by the plaintiffs to comply with the excess acre requirements imposed by the United States Bureau of Reclamation on the District and as indicated by the District in its minutes of November 14, 1972.

Conceding the truth of all evidence offered by the plaintiffs, we are forced to the conclusion that plaintiffs utterly failed to prove the performance of the condition precedent incumbent upon them in order to entitle them to enforce the contract against the defendants. "The general rule is where a contract is executed but its effectiveness or fulfillment is dependent upon the doing of an agreed-upon condition before it shall become a binding contract, such contract cannot be enforced unless the condition is performed." Metschke v. Marxsen, 176 Neb. 240, 125 N. W. 2d 684 (1964).

Plaintiffs' claim that they were discriminated against, mentioned at the beginning of this opinion, is of no avail. It can be disposed of with the simple observation that, notwithstanding their allegations, there was no evidence that other owners of excess acres received water contrary to the excess acre law.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.